1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   Jesse Perez,                        )    No. CV-1-06-610-MHM
                                        )
10            Plaintiff,                 )    **ORDER**
                                        )
11  vs.                                 )
                                        )
12                                       )
    Jeanne Woodford, et al.,            )
13                                       )
              Defendants.               )
14                                       )
                                        )
15  _____    )

16

17          Plaintiff Jesse Perez, a California state prisoner proceeding *in propria persona,*

18  brought this civil rights action under 42 U.S.C. 1983 against certain employees of the

    California Department of Corrections and Rehabilitation ("CDCR").[1]  (Doc. 18)
19
            Pending before the Court are Plaintiff's Motion for Summary Judgment (Doc. 54),
20
    Defendants' Motion for Summary Judgment (Doc. 59), and Defendants' Motion to Strike
21
    Evidence Submitted in Support of Plaintiff's Motion for Summary Judgment (Doc. 62).  The
22
    Court has reviewed the motions and the responses and replies thereto.  The Court has also
23
    conducted an *in camera* review of the confidential documents filed under seal by Defendants.
24
    (Doc. 76)  Accordingly, the Court now enters its ruling.
25

26          [1]  On June 19, 2007, the Court issued an order finding that Plaintiff's Amended
27  Complaint stated cognizable claims for relief against Defendants Winett, Witcher, Meadors,
    McLaughlin, Parry, De La Torre, Moreno, Fortson, Parrilla, and Donnelly for denial of due
28  process and retaliation.  (Doc. 22)

1  **1.    Background**

2      On March 13, 2003, Plaintiff was removed from his cell in the general population at

3  the California Correctional Institution in Tehachapi, California, and was placed in

4  administrative segregation. (Amended Complaint, Doc. 18 at 17)  Plaintiff was informed in

5  writing that the placement was due to the pendency of a gang validation investigation.

6  (Defendants' Statement of Undisputed Facts at 31, Doc. 59, Exh. 2)  Shortly thereafter,

7  Plaintiff appeared at a hearing where it was determined that he would remain in

8  administrative segregation pending completion of the gang validation investigation.  (Doc.

9  18 at 18)  According to Plaintiff, when he requested that he be allowed to review the

10  information that was relied upon for his segregation and was considered in the investigation,

11  he was told that such information would be provided "in due time."  (Id.)

12      On March 15, 2003, Defendant R. Parrilla, an Assistant Institution Gang Investigator

13  ("IGI") and Defendant C. Fortson, Parrilla's supervisor, conducted an investigation which

14  turned up six items of evidence against Plaintiff, which consisted of the following:

15      1.    CDC 128-B dated March 15, 2003, indicating that during the search of
16            Plaintiff's property, the "Matlactlomei" symbol was discovered written
              inside of a magazine belonging to Plaintiff.

17      2.    CDC 128-B dated March 11, 2003, indicating that a validated associate
18            of the Mexican Mafia ("EME") prison gang sent correspondence to
              Plaintiff.   The correspondence indicates that the same validated
19            associate received prior correspondence from Plaintiff.

        3.    Confidential Memorandum dated December 19, 2002, indicating that
20            during a confidential interview with a reliable source, Plaintiff was
21            identified as being in contact with a validated member of the Mexican
              Mafia prison gang.

22      4.    CDC 128-B dated November 19, 2002, indicating that Plaintiff sent
23            correspondence to a validated associate of the Mexican mafia prison
              gang.

24      5.    Confidential Memorandum dated September 19, 2002, indicating that
25            during a confidential interview with a reliable source, Plaintiff was
              identified as being in a position of authority over Southern Hispanic
26            inmates on behalf of a validated member of the Mexican Mafia prison
              gang.

27      6.    Confidential Memorandum dated August 20, 2002, indicating that a
28            message for Plaintiff referring to the activities of the Mexican Mafia
              prison gang was discovered in correspondence authored by a validated

1      associate of the Mexican Mafia prison gang.

2   (Id. at 19)

3          The results of this investigation were compiled into a "validation package," which was

4   forwarded to the Law Enforcement Investigations Unit ("LEIU") in Sacramento for review.

5   (Id. at 20)  On April 15, 2003, Defendants Parry, De La Torre, and Moreno, who were LEIU

6   panel members, concluded a quality review check of each individual source item and

7   determined that the six items of evidence were sufficient to support validating Plaintiff as an

8   associate of the Mexican Mafia.  (Id. at 23)

9          On September 10, 2003, an Institutional Classification Committee ("ICC") was

10   convened, which included Defendants McLaughlin, Witcher and Winett as panel members.

11   The ICC found that Plaintiff met the criteria for an indeterminate term in the Security

12   Housing Unit ("SHU") for his validation as an associate of the Mexican Mafia prison gang.

13   The ICC referred Plaintiff to the Classification Services Representative ("CSR"),

14   recommending an indeterminate placement in the SHU at Pelican Bay State Prison.  (Doc.

15   59, Exh. 2 at 42)

16          On October 15, 2003, Defendants McLaughlin, Witcher, Winett and Meadors

17   participated in an ICC hearing, at which time Plaintiff voiced his disagreement with the

18   validation.  (Id. at 24)  According to Plaintiff, he was not allowed to "present his views" at

19   that time nor did he "receive any notice" regarding the evidence used in his validation.  (Id.)

20   After reviewing Plaintiff's chrono indicating that Plaintiff had been validated as a associate

21   of the Mexican Mafia, documents from prior ICC hearings, and the contents of Plaintiff's

22   central file, Defendants reaffirmed their decision of September 10, 2003, and again

23   recommended that Plaintiff be referred to the CSR for transfer to the SHU at Pelican Bay

24   State Prison in light of the validation.  (Id.; Doc. 59, Exh. 2 at 45, 46)

25          On October 28, 2003, Defendant E. Donnelly, the CSR, conducted a review of the

26   October 15, 2003 ICC hearing, confirming that copies of all of the forms regarding the

27   evidence used to validate Plaintiff were in his central file and that copies had been provided

28   to Plaintiff in advance of his ICC hearing.  Defendant Donnelly then approved the transfer

recommendation.  (<u>Id.</u> at 25; Doc. 59, Exh. 2 at 47, 48)

Plaintiff filed an inmate appeal challenging the adequacy of the evidence on which his gang validation was based.  Plaintiff claimed that he had not had an opportunity to dispute the evidence.  (Doc. 59, Exh. 2 at 49)  On December 19, 2003, Plaintiff's grievance was denied by Associate Warden M. Witcher and Chief Deputy Warden D. Winett, who were on the ICC panel.  (<u>Id.</u> at 50)  On December 23, 2003, Plaintiff was transferred to Pelican Bay State Prison.  (Doc. 18 at 26)

In his Amended Complaint, Plaintiff presents two claims for relief.  For his first cause of action, Plaintiff claims that his prison gang validation and indeterminate placement in the prison's SHU was made without meaningful notice and an opportunity to be heard in violation of his right to due process under the Fourteenth Amendment to the United States Constitution.  (Doc. 18 at 53)  For his second cause of action, Plaintiff claims that his prison gang validation and indeterminate placement in the prison's SHU was made without sufficient evidence in violation of his right to due process under the Fourteenth Amendment to the United States Constitution.  <u>Id.</u> at 55)  Plaintiff seeks declaratory, injunctive, and monetary relief.

**II.    Motions for Summary Judgment**

**A.    Plaintiff's Motion for Summary Judgment**

In his Motion for Summary Judgment (Doc. 54), Plaintiff argues that his confinement in the SHU "with no end in sight" raises a "significant liberty interest" due to "atypical and harsh conditions that exist at the PBSP super-max SHU."

Plaintiff also argues that Defendants did not provide him with "meaningful notice and have never allowed [him] an opportunity to present his views."  Plaintiff contends that he did not receive notice of the bases for his indefinite segregation until August 20, 2003, over four month after he had been actually validated, which renders such notice meaningless.  Plaintiff further argues that, apart from the "brief contact with Defendant Parilla on March 13, 2003," he "has never been provided an opportunity to present his views to the decision maker, i.e., the IGI, on the underlying reasons for his segregation and indefinite term."

1    Plaintiff also contends that his "indeterminate segregation is not supported by 'some
2    evidence' with some indicia of reliability." Specifically, Plaintiff points to evidentiary item
3    number 6, which states that "Disclosure of this information could threaten the safety and
4    security of the institution." Plaintiff claims that such statement of reliability is "insufficient."
5    Plaintiff further argues that with respect to evidentiary item numbers 6, 5, and 3, the
6    "Defendants' failure to charge [him] with a rules violation for gang activity reveals that they
7    themselves did not find the claim [] credible [or] reliable." Plaintiff contends that with
8    respect to the letters referenced in evidentiary item numbers 4 and 2, such letters were
9    "innocuous correspondence" relating to ordinary prison life and were not indicative of gang
10   activity.   Finally, with respect to evidentiary item number 1, Plaintiff asserts the
11   "Matlactlomei" symbol "merely represents that a prisoner is from southern California."
12   Accordingly, Plaintiff concludes that his validation and indefinite placement in the SHU is
13   not supported by some evidence containing some indicia of reliability.

14         Plaintiff also argues that Defendants are not entitled to qualified immunity.

15         In their Response (Doc. 63), Defendants argue that Plaintiff received substantive due
16   process because Plaintiff's validation was supported by "six separate items of evidence," any
17   one of which "constitutes 'some evidence' that plaintiff is associated with the EME prison
18   gang." Defendants further argue that Plaintiff received procedural due process because he
19   "had many opportunities to dispute his validation" and did so "before he was transferred to
20   Pelican Bay State Prison." Defendants also maintain that because gang validation is an
21   administrative, rather than a disciplinary, determination, they were not required to issue a
22   rules violation report each time their investigation revealed evidence of his association with
23   the EME. Finally, Defendants assert that Plaintiff's reliance on Madrid v. Gomez, 889 F.
24   Supp. 1146 (1995), in support of his claim that his confinement raises a significant liberty
25   interest, is misplaced.

26         In his Reply (Doc. 67), Plaintiff argues, that contrary to Defendants' position, the
27   issue is not whether there is any evidence that Defendants can point to, but whether there is
28   any evidence that is supported by some indicia of reliability. Plaintiff further argues that

1  contrary to Defendants' assertion that Plaintiff had many opportunities to dispute the

2  evidence against him, "Defendants prohibited Plaintiff from addressing the basis of his prison

3  gang validation until the completion of his determinate SHU term, i.e., October 15, 2003."

4  Plaintiff also argues that the official charged with making the decision regarding segregation

5  based upon prison gang validation is the Institutional Gang Investigator or IGI, and that

6  Defendants Witcher, Meadors and Winett, who made the decision in his case, are not IGIs.

7

8               **B.     Defendants' Motion for Summary Judgment**

9          In their Motion for Summary Judgment (Doc. 59), Defendants argue that any one of

10  the six separate items of evidence used to support Plaintiff's gang validation "constitutes

11  'some evidence' that Plaintiff is associated with the Mexican Mafia prison gang."

12  Defendants also assert that Plaintiff was provided with procedural due process in his

13  validation as an associate of the Mexican Mafia prison gang because he was given notice and

14  an opportunity to present his views before he was transferred to the SHU: Plaintiff received

15  gang validation materials in April and August 2003, before the ICC convened in September

16  2003 and October 2003; in October Plaintiff expressed his disagreement with the validation

17  evidence; and before he was transferred to the SHU at Pelican Bay, he contested the evidence

18  against him through the inmate grievance process.

19          Defendants further argue that Plaintiff's participation in the grievance process prior

20  to his transfer to Pelican Bay "would correct any procedural due process violation that he

21  claims occurred." Defendants assert that Plaintiff's grievance "was investigated and denied

22  by Associate Wardens Witcher and/or Meadors and Chief Deputy Warden Winett - who were

23  on the ICC panel with the ability to uphold or rescind Plaintiff's referral to a CSR for

24  transfer."

25          Defendants also argue that the Court lacks jurisdiction over Plaintiff's claims in his

26  Amended Complaint that his due process rights were violated because Defendants failed to

27  follow prison regulations. Citing Pennhurst State School & Hospital v. Halderman, 465 U.S.

28  89 (1984), Defendants argue that federal courts lack jurisdiction to hear claims based on

1    alleged violations of state regulations.

2        With respect to Plaintiff's claim that Defendants were required to issue a rules

3    violation report for gang activity, Defendants argue that "the Eleventh Amendment prohibits

4    federal lawsuits for state officials' alleged noncompliance with state regulations."

5        Finally, Defendants argue that, in light of the facts of this case, they are entitled to

6    qualified immunity.

7        In his Response (Doc. 72), Plaintiff argues that Defendants did not, and could not

8    claim that "Plaintiff was giving (sic) a meaningful opportunity to present his views to an

9    IGI."   Plaintiff also argues that Defendants "prohibited Plaintiff from addressing the

10   validation matter until the completion of his determinate SHU term, i.e., October 2003."

11   Plaintiff further argues that Defendants' review of his appeal at the second level was "so

12   deficient that the Director's Level Review remanded the grievance back to the second level

13   for proper review."

14       Plaintiff also argues that Defendants are not entitled to qualified immunity "because

15   Plaintiff alleges violations of clearly established constitutional rights."

16       In their Reply (Doc. 75), Defendants argue that Plaintiff has not presented evidence

17   demonstrating a material factual dispute.  Defendants cite Local Rule 56-260(b), which

18   requires a party opposing a motion for summary judgment to reproduce the moving party's

19   itemized statement of undisputed facts and admit or deny those facts, including a citation to

20   the particular portion of any document relied upon in support of any denial.  Defendants

21   argue that Plaintiff did not comply with this requirement or file his own separate statement

22   of disputed facts as permitted by this rule.  Defendants contend that because Plaintiff's

23   opposition does not address Defendants' undisputed facts or tender admissible evidence

24   sufficient to meet his burden, Defendants are entitled to summary judgment.

25       Defendants also contend that they are entitled to qualified immunity for their actions

26   "undertaken with the reasonable belief that they complied with the law as it existed when

27   Plaintiff was validated and transferred to Pelican Bay in 2003."  In addition, Defendants

28   argue that the ICC, not the IGI, had the authority to decide whether Plaintiff would be

1  transferred to the SHU at Pelican Bay, therefore "any lack of due process in the initial
2  validation was cured by Plaintiff's opportunity to present his views in his appeal of the
3  validation."

4  **III.    Summary Judgment Standard**

5      A court must grant summary judgment if the pleadings and supporting documents,
6  viewed in the light most favorable to the non-moving party, "show that there is no genuine
7  issue as to any material fact and that the movant is entitled to judgment as a matter of law."
8  Fed. R. Civ. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  Under
9  summary judgment practice, the moving party bears the initial responsibility of presenting
10 the basis for its motion and identifying those portions of the record, together with affidavits,
11 that it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex</u>, 477
12 U.S. at 323; <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

13     If the moving party meets its burden with a properly supported motion, the burden
14 then shifts to the opposing party to present specific facts that show there is a genuine issue
15 for trial. Fed. R. Civ. P. 56(e); <u>Auvil v. CBS "60 Minutes"</u>, 67 F.3d 816, 819 (9th Cir. 1995);
16 <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The opposing party need not
17 establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed
18 factual dispute be shown to require a jury or judge to resolve the parties' differing versions
19 of the truth at trial."  <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89
20 (1968).  But conclusory allegations, unsupported by factual material, are insufficient to defeat
21 a motion for summary judgment.  <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).
22 Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate
23 specific facts that show there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249;
24 <u>Devereaux</u>, 263 F.3d at 1076.

25     At summary judgment, the judge's function is not to weigh the evidence and
26 determine the truth but to determine whether there is a genuine issue for trial.  <u>Summers v.</u>
27 <u>A. Teichert & Son, Inc.</u>, 127 F.3d 1150, 1152 (9th Cir. 1997).  In assessing whether a party
28 has met its burden, the court views the evidence in the light most favorable to the non-

1    moving party.  Anderson, 477 U.S. at 255.  And all reasonable inferences that may be drawn

2    from the facts must be drawn in favor of the opposing party.  See Matsushita Elec. Indus.

3    Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

4    **IV.    Discussion**

5         Plaintiff first claims that his prison gang validation and indeterminate placement in

6    the prison's SHU were made without meaningful notice and an opportunity to be heard in

7    violation of the Due Process Clause of the Fourteenth Amendment.

8         The Due Process Clause of the Fourteenth Amendment prohibits the states from

9    "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const.

10   amend. XIV, § 1.  To determine whether a procedural due process violation has occurred, a

11   court engages in a two-step analysis.  First, a court looks to whether the person possesses a

12   constitutionally cognizable liberty interest with which the state has interfered.  Sandin v.

13   Conner, 515 U.S. 472 (1995).  Second, if the state has interfered with a liberty interest, a

14   court looks to whether this interference was accompanied by sufficient procedural and

15   evidentiary standards.  Kentucky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989);

16   Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987).

17        Relying on Madrid, 889 F. Supp. 1146, Plaintiff argues that his confinement in the

18   SHU "with no end in sight" raises a "significant liberty interest" due to "atypical and harsh

19   conditions that exist at the PBSP super-max SHU."  Plaintiff contends that his gang

20   validation makes him ineligible for parole consideration under the Board of Prison Terms

21   policy and thus directly affects the duration of his sentence.  Defendants contend  that

22   Plaintiff's reliance on Madrid is misplaced and that "[a] full reading reveals the Madrid court

23   found the conditions in the SHU at PBSP constitutional."  Defendants argument misses the

24   mark.  That conditions in the SHU may be constitutional does not preclude a conclusion that

25   they are nevertheless harsh.  These harsh conditions coupled with the fact that Plaintiff's

26   placement is indefinite and that such placement disqualifies an otherwise eligible inmate for

27   parole consideration, "taken together . . . impose an atypical and significant hardship within

28   the correctional context."  See Wilkinson v. Austin, 545 U.S. 209, 224 (2005).  Accordingly,

1  the Court finds that Plaintiff has a liberty interest in avoiding assignment to the SHU.  Id.

2      The Court turns next to the question whether Plaintiff received meaningful notice of

3  being considered for gang validation and an opportunity to present his views.  The quantum

4  of process that is constitutionally due to segregated inmates depends upon whether the

5  segregation is punitive or administrative in nature.  Toussaint v. McCarthy, 801 F.2d 1080,

6  1099 (9th Cir. 1986) (" Toussaint IV").  "California's policy of assigning suspected gang

7  affiliates to the [SHU] is not a disciplinary measure, but an administrative strategy designed

8  to preserve order in the prison and protect the safety of all inmates."  Bruce v. Ylst, 351 F.3d

9  1283, 1287 (9th Cir. 2003).  In the case of administrative segregation, [p]rison officials must

10  hold an informal nonadversary hearing within a reasonable time after the prisoner is

11  segregated.  The prison officials must inform the prisoner of the charges against the prisoner

12  or their reasons for considering segregation.  Prison officials must allow the prisoner to

13  present his views.  Toussaint IV, 801 F.2d at 1099.

14      Here, Plaintiff alleges that "[i]n the October 15, 2003 hearing ICC defendants allowed

15  plaintiff to address his segregation, based on prison gang affiliation, for the first time."

16  Plaintiff argues that because the ICC defendants were not "the official[s] charged with

17  making the [validation] decision" in the first instance, he was not afforded due process.

18      Defendants contend that Plaintiff "could have addressed his segregation before

19  October 15,2003, but did not do so."  Relying on Raditch v. United States, 929 F.2d 478, 481

20  (9th Cir. 1991), Defendants argue that, in any event, a violation of procedural due process

21  rights requires only a procedural correction and not a reinstatement of the substantive right.

22  Defendants contend that providing Plaintiff with an adequate opportunity to present his views

23  through the grievance process would correct any procedural due process violation that he

24  claims occurred.  Defendants note that Plaintiff was not transferred to the SHU at Pelican

25  Bay State Prison until after his grievance was investigated and denied at the second level by

26  Associate Wardens Witcher and/or Meadors and Chief Deputy Warden Winett - "who were

27  on the ICC panel with the ability  to uphold or rescind Plaintiff's referral to a CSR for

28  transfer."

1    Defendants correctly assert that due process requires providing an inmate with the

2 opportunity to present his views not simply to any prison official, but rather to the "official

3 charged with deciding whether to transfer him to administrative segregation." Hewitt v.

4 Helms, 459 U.S. 460, 476 (1983).  However, contrary to Defendants' contention, the ICC

5 officials were not the officials charged with making such decision.   In the case of

6 administrative segregation founded upon positive gang validation, the official charged with

7 deciding whether to transfer or retain an inmate in administrative segregation is the IGI.

8 Toussaint IV, 926 F.2d at 803; see also Madrid, 889 F. Supp. at 1276 (N.D. Cal. 1995) ("[I]t

9 is clear that the critical decisionmaker in the process is . . . the IGI.").  Thus, prior to

10 validation as a gang member, Plaintiff was entitled to an "informal nonadversary hearing"

11 with an IGI.  Plaintiff's grievance hearing before the ICC officials would not correct any

12 procedural due process violation.  Because there is a genuine issue of material fact as to

13 whether Plaintiff declined an opportunity to present his views to the IGI or whether he was

14 denied an opportunity to do so, the Court will deny the motions for summary judgment.

15    In light of the Court's decision above, the Court need not address Plaintiff's claim that

16 his prison gang validation and indeterminate placement in the prison's SHU was made

17 without sufficient evidence in violation of his right to due process under the Fourteenth

18 Amendment

19    As a final matter, the Court finds that in light of clearly established law at the time of

20 Plaintiff's validation, a reasonable officer could not have believed that the requirement of

21 providing Plaintiff with an opportunity to be heard by an IGI was satisfied by his appearance

22 before ICC officials at his grievance hearing.  Accordingly, Defendants are not entitled to

23 qualified immunity.  See Somers v. Thurman, 109 F.3d 614, 617 (9th Cir. 1997).

24 **IV.    Defendants' Motion to Strike Evidence Submitted in Support of Plaintiff's
        Motion for Summary Judgment (Doc. 62)**

25
      In  support  of  his  summary  judgment  motion,  Plaintiff  submits,  among  other

26 attachments,  the  declarations  of  inmates  Daniel  Hiriarte,  Larry  Boardman,  Salvador

27 Mendoza, and Hilario Martinez.  Defendants have filed a Motion to Strike (Doc. 62) these

28

1   declarations on the grounds that they are inadmissible character evidence, are not relevant,

2   and the declarants lack personal knowledge.   The Court cannot consider inadmissible

3   evidence in its summary judgment analysis.  See Fed. R. Civ. P. 56(e); Orr v. Bank of Am.,

4   285 F.3d 764, 773 (9th Cir. 2002) (a court may consider only admissible evidence in ruling

5   on a summary judgment motion).  Accordingly, the Court will deny said motion as moot.

6          Relying on Federal Rule of Civil Procedure 56(f), Plaintiff requests a continuance in

7   order to obtain additional declarations in support of his summary judgment motion.  (Doc.

8   68)  First, Plaintiff's reliance on Rule 56(f) is misplaced.  Rule 56(f) applies to "a party

9   *opposing* the motion [for summary judgment]." (Emphasis added.)  Here, Plaintiff has moved

10  for  summary judgment.   Next, in light of the Court's ruling above, Plaintiff's request is

11  moot.  Accordingly, the Court will deny Plaintiff's request for a continuance.

12  **V.     Conclusion**

13         Based on the foregoing,

14         **IT IS ORDERED** denying Plaintiff's Motion for Summary Judgment.  (Doc. 54),

15         **IT IS FURTHER ORDERED** denying Defendants' Motion for Summary Judgment.

16  (Doc. 59)

17         **IT IS FURTHER ORDERED** denying Defendants' Motion to Strike Evidence

18  Submitted in Support of Plaintiff's Motion for Summary Judgment.  (Doc. 62).

19         **IT IS FURTHER ORDERED** denying Plaintiff's request for a continuance.

20         DATED this 30th day of September, 2010.

21

22

23  _____
                              Mary H. Murgula
24                      United States District Judge

25

26

27

28

- 12 -